UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
)
GREGORY ROSS,                        )
                                     )
            Plaintiff,               )
                                     )
     v.                              )   Civil Action No. 18-0671 (ABJ)
                                     )
GEORGETOWN                           )
UNIVERSITY, et al.,                  )
                                     )
            Defendants.              )
                                     )
```

## MEMORANDUM OPINION

Plaintiff Gregory Ross is a member of the Georgetown University Police Department ("GUPD"). Am. Compl. [Dkt. # 10] ¶ 2. He claims that his employer, Georgetown University, and his supervisor, Captain Glenette M. Hilton, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (2012), and the D.C. Human Rights Act ("DCHRA") of 1977, D.C. Code § 2-1402.11, when they allegedly discriminated against him and subjected him to a hostile work environment. *Id.* ¶ 1.

Defendants moved to dismiss the amended complaint, arguing that (1) plaintiff failed to state a timely claim under both Title VII and the DCHRA; (2) he failed to exhaust his administrative remedies under Title VII; (3) he failed to make the requisite election of remedies under the DCHRA; and (4) he failed to sufficiently plead a hostile work environment claim under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss [Dkt. # 12] ("Defs.' Mot."); Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 12-1] ("Defs.' Mem.") at 5–11. Defendants also argue that the claims against Captain Hilton should be dismissed entirely because they are barred or otherwise without foundation. Defs.' Mem. at 11–14.

The Court will grant the motion in part and remand the remainder of the case to the D.C. Superior Court. Plaintiff's Title VII claims for discrimination, retaliation, and hostile work environment will be dismissed because they are untimely and fail to state a claim. Since the federal claims will be dismissed, the Court will not exercise supplemental jurisdiction over plaintiff's state law claim, and it will be remanded to the Superior Court for further proceedings.

## BACKGROUND

Plaintiff Gregory Ross began working at Georgetown University on November 6, 1996 as a Patrol Officer with the University's Police Department. Am. Compl. ¶ 7. In 2009, he was promoted to Patrol Sergeant. *Id.* ¶ 9.

In 2012, GUPD hired Captain Glenette Hilton, who became plaintiff's supervisor. Am. Compl. ¶ 10. Plaintiff asserts that the department then increased its emphasis on racial profiling, "particularly of African Americans." *Id.* ¶ 11. Plaintiff refused to participate in this practice, and he asserts that his refusal "has resulted in continued negative performance reviews and reprimands, creating a hostile work environment for him." *Id.* ¶ 12. The complaint recounts a number of incidents that plaintiff alleges were animated by racial discrimination and retaliation:

1. On March 2, 2012, plaintiff "was involved in an accident involving a university vehicle while exiting a University parking lot," and while it was only a "minor scrape," and he immediately reported it, "he was nevertheless reprimanded." Am. Compl. ¶ 13. He notes that other officers involved in similar accidents were not similarly reprimanded. *Id.* ¶ 14.

2. On October 24, 2012, plaintiff "was suspended for one (1) day without pay for insubordination" because he allegedly worked overtime without authorization on October 7, 2012. Am. Compl. ¶ 15. The suspension was overturned, and on January 23, 2013, his related pay was restored. *Id.*

3. On August 18, 2014, plaintiff was involved in apprehending a bicycle thief. The other officers involved received recognition for the arrest, but he did not. Am. Compl. ¶¶ 16–17.

4. In September 2014, plaintiff refused to arrest three young African American men who were sitting outside one of the University's libraries. Am. Compl. ¶ 18. Someone had made a report concerning the men, and plaintiff responded to the scene, but when he arrived, "he observed no indication of wrongdoing," and he took no action because, according to plaintiff, he lacked probable cause. *Id.* On November 24, 2014, plaintiff was suspended for three days as a result of his inaction. *Id.* ¶ 19. He claims that Captain Hilton reprimanded him, stating: "You knew what they were. You grew up in D.C. They should have been arrested." *Id.* ¶ 20.

5. On January 8, 2015, plaintiff supervised a team of officers making an arrest, but he did not receive recognition for it. Am. Compl. ¶ 21.

6. On March 15, 2015, during that year's NCAA Men's Basketball Annual Tournament Selection Sunday, an African-American man was "apparently attempting, uninvited, to speak with Coach John Thompson III." Am. Compl. ¶ 22. GUPD was called, and according to plaintiff, the event coordinator instructed the officers not to arrest the man. *Id.* ¶¶ 23–24. Plaintiff "assessed the situation, and assigned one of his Officers to monitor the individual." *Id.* He then left the scene to resume his campus patrol. *Id.* At some point, the same individual renewed his unwelcome attempts to contact Coach Thompson, and the assigned officer escorted him to the police station where he was issued a "Banning Order." *Id.* ¶ 25. On May 27, 2015, plaintiff was demoted to Special Police Officer by Chief of Police Jay Gruber, on the recommendation of Captain Hilton, for "poor work performance and failure to adhere to operational guidelines" because he failed to stay at the event and arrest the man. *Id.* ¶¶ 28–31. Plaintiff asserts he was following "a written policy of de-escalation." *Id.* ¶ 28.

7. On January 20, 2016, Captain Hilton allowed the University's SafeRide program to continue operating despite a snow storm, and when plaintiff's vehicle slid down the road into another car, he was blamed for the accident. Am. Compl. ¶¶ 32–34.

On December 1, 2015,[1] plaintiff submitted an "Intake Questionnaire" to the D.C. Office of Human Rights ("DCOHR") alleging that the University had subjected him to discrimination and retaliation on the basis of his race. Am. Compl. ¶ 37; Intake Questionnaire, Ex. 2 to Pl.'s Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 15-1]. On May 19, 2016, a Charge of Discrimination was filed with the DCOHR. *See* Charge of Discrimination, Ex. A to Defs.' Mot. [Dkt. # 12-2] ("Disc. Charge"). The face of the charge indicates that it was cross-filed with the EEOC. *Id.*

On January 29, 2018, plaintiff initiated a civil action in the Superior Court of D.C. against Georgetown University, Captain Hilton, University President John J. DeGioia, and Chief of Police Jay Gruber for violations of Title VII and the D.C. Human Rights Act. *See* Notice of Removal [Dkt. # 1] ("Removal Notice") at 1. Defendants removed the action to this Court on March 23, 2018 on the basis of federal question jurisdiction under 28 U.S.C. § 1441(a). *Id.* at 2–3. On April 26, 2018, plaintiff filed an amended complaint asserting the same claims against Georgetown University and Captain Hilton (collectively, "defendants"); the parties stipulated to the dismissal of the other two defendants on May 4, 2018. *See generally* Am. Compl.; Stipulation of Dismissal [Dkt. # 11].

On May 10, 2018, defendants moved to dismiss the complaint. *See* Defs.' Mot.; Defs.' Mem. Plaintiff opposed the motion on June 11, 2018, *see* Pl.'s Mem. of P. & A. in Opp. to Defs.'

---

1     In his Amended Complaint, plaintiff states that he submitted the Intake Questionnaire on December 11, 2015. Am. Compl. ¶ 37. But in his Memorandum Responding to the Court's March 25 Minute Order, plaintiff states he filed the Intake Questionnaire on December 1, 2015. *See* Mem. Responding to Court's March 25 Order [Dkt. # 19] ("Pl.'s Resp.") at 1. Whether it was December 1 or December 11 does not make a difference to the timeliness of plaintiff's claims. The date of the handwritten Intake Questionnaire is difficult to decipher, but it appears to indicate that it was filed on December 1, 2015, and so the Court will use this date. *See* Intake Questionnaire, Ex. 2 to Pl.'s Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 15-1] at 2.

4

Mot. [Dkt. # 15] ("Pl.'s Mem."), and defendants replied on June 22, 2018. *See* Defs.' Reply to Pl.'s Mem. [Dkt. # 17] ("Defs.' Reply").

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a

5

court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

I. **Title VII Discrimination and Retaliation Claims**

    A. **Timeliness**

Title VII requires the "person aggrieved" to file a charge with the EEOC within 180 days after the alleged unlawful employment practice occurred, but this period is extended to 300 days if the person "has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1). Because plaintiff filed an Intake Questionnaire with the DCOHR, thereby instituting proceedings with a local agency, he had 300 days from the time of the alleged violation to file his charge. Am. Compl. ¶ 37; Intake Questionnaire.

Plaintiff seems to argue that the statute of limitations applicable to his Title VII claims is one year because the DCHRA provides a one-year statute of limitations. *See* Pl.'s Mem. at 2 (arguing that the defense's claim that the complaint is "time-barred under Title VII is irrelevant because he filed under the [DCHRA] which provides a one-year deadline"). Plaintiff is correct that the DCHRA establishes a one-year limitations period, *see* D.C. Code § 2-1403.16(a), but the

6

statute of limitations set forth in the D.C. Code does not apply to Title VII claims. *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123 (1988) ("[S]tate time limits for filing discrimination claims do not determine the applicable federal time limit."); *see Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 319 (D.D.C. 2018) (filing a complaint with the DCOHR did not render plaintiff's Title VII claims timely). Thus, 300 days is the correct time period to apply to plaintiff's Title VII claims.

Defendant argues that the claims brought under Title VII are time-barred because the complaint does not allege that any unlawful employment practices occurred within 300 days of May 19, 2016, the date plaintiff filed a document entitled "Charge of Discrimination" with the D.C. agency. *See* Disc. Charge. Plaintiff asserts that the date he submitted the original Intake Questionnaire to the DCOHR – December 1, 2015 – should control instead. *See* Pl.'s Mem. at 2–3.

To file a complaint with the DCOHR, all one needs to do is fill out and submit the Intake Questionnaire. *See* "File a Discrimination Complaint," DCOHR, https://ohr.dc.gov/service/file-discrimination-complaint (last accessed May 29, 2019). The description of the Intake Questionnaire states: "Submitting this complaint questionnaire does not constitute the formal filing of a discrimination charge, but it serves to preserve all rights under the statute of limitations." *See* Intake Questionnaire, Ex. 1 to Pl.'s Mem. [Dkt. # 15-1] ("Intake Questionnaire Description"). Under the "Acknowledgement" section of the Intake Questionnaire, a complainant has the option to check a box that states: "I want to file a charge of discrimination, and I authorize OHR to investigate the discrimination I described above." Intake Questionnaire at 2. But, plaintiff did not check that box on his Intake Questionnaire. *See id*.

The DCOHR and the EEOC have a work-sharing agreement, which means that "[c]harges received by one agency under the agreement shall be deemed received by the other agency." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1372 (D.C. Cir. 2008), citing 29 C.F.R. § 1626.10(c) (regulations applicable to the ADEA); *see* 29 C.F.R. § 1601.13(a)(4)(ii)(A) ("Where the document on its face constitutes a charge . . . the charge is deemed to be filed with the [EEOC] upon receipt of the document. Such filing is timely if the charge is received within 300 days from the date of the alleged violation."). The "charge" plaintiff filed with the DCOHR specifically states that it is being cross-filed with the EEOC. *See* Disc. Charge at 2 (indicating that the charge was "presented to" the EEOC).

Plaintiff maintains that the Intake Questionnaire he submitted on December 1, 2015 qualifies as a "charge" that was cross-filed with the EEOC for purposes of the statute of limitations. *See* Pl.'s Resp. at 1. But the D.C. Circuit has found that an "Intake Questionnaire is not a Charge of discrimination." *Dyson v. District of Columbia*, 710 F.3d 415, 418 (D.C. Cir. 2013). In that case, the plaintiff filed an Intake Questionnaire with the EEOC alleging sexual harassment claims under both the DCHRA and Title VII. *Id.* A charge of discrimination was filed months later, beyond the time period set forth in Title VII. The Court reasoned that because the Intake Questionnaire expressly warned claimants that a charge must be filed with the EEOC within the time limits imposed by law, that the filing of the questionnaire did not toll the statute of limitations. *Id.*

While in the *Dyson* case, the Intake Questionnaire was filed first with the EEOC, and here it was filed first with the DCOHR, the DCOHR Intake Questionnaire states on its face that it "does not constitute the formal filing of a discrimination charge." *See* Intake Questionnaire Description; *see also* "Employment Intake Questionnaire Form," DCOHR,

https://ohr.dc.gov/page/employment-intake-questionnaire-form (last accessed May 29, 2019). And on December 1, plaintiff did not check the box on the Intake Questionnaire with which he could have stated: "I want to file a charge of discrimination." *Id.* Instead, plaintiff filed a separate document, entitled "Charge of Discrimination," more than five months later, on May 19, 2016. *See* Disc. Charge. at 2. This document does state that it was simultaneously filed with the EEOC, and that there, it was assigned case number 10C-2016-00435. *Id.* Indeed, the case number itself is indication that as far as the federal agency was concerned, the charge was not filed in 2015, since it is labeled with the year 2016.[2]

Plaintiff points out that the DCOHR Intake Questionnaire states that it preserves all rights under the statute of limitations. Pl.'s Mem. at 3. And the District's form does have that effect in connection with claims brought under D.C. law. In order for the DCHRA claims to be timely, a plaintiff need only file a "complaint" with the DCOHR "within [one] year of the occurrence of the unlawful discriminatory practice, or the discovery thereof," D.C. Code § 2–1403.04(a), and an Intake Questionnaire qualifies as a "complaint." *See* "File a Discrimination Complaint," DCOHR, https://ohr.dc.gov/service/file-discrimination-complaint (last accessed May 29, 2019) (instructing that "[t]o file a complaint with the [DCOHR]," a person must "simply complete an intake questionnaire and submit it to [the DCOHR]"). But, as the D.C. Circuit explained in *Dyson*, that

---

2   While the Intake Questionnaire and Charge of Discrimination are not attached to his complaint, the Court concludes that they have been incorporated by reference since each is "referred to in the complaint and [is] integral to [plaintiff's] claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). Exhibits so incorporated are considered part of the pleadings and may be considered by the Court on a motion to dismiss without converting the motion into a motion for summary judgment. *Id.*; *see* Fed. R. Civ. P. 10(c).

9

does not mean that the Intake Questionnaire qualifies as a Charge of Discrimination that was cross-filed with the EEOC on that date.³ *See* 710 F.3d at 418.

Thus, the Court finds that the "Charge" was filed on May 19, 2016, and that only allegations based on discriminatory acts that occurred 300 days prior to that date are timely for the purposes of the Title VII claims. Defendant only alleges one act that occurred within this time period: that on January 20, 2016, he was blamed for an accident involving a university vehicle. *See* Am. Compl. ¶¶ 32–34. For the reasons stated in the next section, this incident does not qualify as an adverse action for purposes of Title VII.

Plaintiff also seems to suggest that all of the acts he identifies are related and connected events, and so they cannot be time-barred since the last act occurred within 300 days of the filing of the questionnaire. *See* Pl.'s Mem. at 4–5. But each of the actions asserted by plaintiff is a

---

3    On June 15, 2016, the DCOHR issued a "Notice of Charge of Discrimination and Mandatory Mediation." *See* Notice of Charge of Discrimination and Mandatory Mediation, Ex. 3 to Pl.'s Resp. [Dkt. # 19-1] ("Notice of Charge"). It states:

> A timely charge of discrimination was received on 12/11/2015 and has been filed with the District of Columbia Office of Human Rights (OHR) by the above named Complainant against the above named Respondent.

*Id.* at 1. In a footnote to that paragraph, it states:

> Pursuant to DCMR Title IV §§ 705.2 and 705.4, OHR considers the date of a complainant's initial written contact with OHR to determine timeliness. This case may have been transferred from the United States Equal Employment Opportunity Commission (US EEOC) to OHR for investigation pursuant to a work sharing agreement between the agencies.

*Id.* at n.1. This Notice was issued on June 15, 2016 – after the Charge of Discrimination had been filed – so it was technically correct. *Id.* While at first blush, this document appears to muddy the waters with respect to the chronology in this case, the Court believes that the date in the Notice was erroneous and that it does not suffice to alter the nature or legal significance of the questionnaire that was filed in December. The face of the questionnaire explicitly states that it is not a charge. And, when the DCOHR issued its Notice on June 15, it attached the May 19, 2016 Charge of Discrimination, not the questionnaire. *Id.*

discrete act. *See, e.g.*, *Arnold v. Jewell*, 6 F. Supp. 3d 101, 110 (D.D.C. 2013) (suspension is a discrete act); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 81–84 (D.D.C. 2007) (transfer is a discrete act). To the extent that plaintiff relies on these acts to support his claim for retaliation or discrimination, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The Supreme Court set out the applicable principles in the *Morgan* opinion:

> Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [prescribed statutory] time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* The Supreme Court specifically rejected the concept of a "continuing violations doctrine" with regard to discriminatory or retaliatory acts.[4] *Id.* Thus, the Court cannot consider actions outside the applicable time period, even if they are related to those occurring within the time period, for discrimination or retaliation claims. And the sole allegation that is timely fails to state a claim.

### B. Failure to State a Claim

Plaintiff alleges that on January 20, 2016, he was unfairly blamed for an accident involving a university vehicle, and he attributes this event to his employer's ongoing discriminatory and retaliatory bias. Defendant argues that "non-recognition, reprimand, and blame without

---

4   This principle does not apply to hostile work environment claims as explained in more detail in Section II below.

consequences" are not adverse actions sufficient to form the basis of a discrimination claim or a retaliation claim. Defs.' Mem. at 6 n.5. The Court agrees.

To qualify as an adverse employment action for a discrimination claim, an action must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). An employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment such that a reasonable trier of fact could find objectively tangible harm. *Id.*

For retaliation claims, the term "adverse action" has a broader meaning. In that context, actions giving rise to claims are "not limited to discriminatory actions that affect the terms and conditions of employment," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006), but they may include any harm that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68; *see Baird v. Snowbarger*, 744 F. Supp. 2d 279, 290–91, 292 (D.D.C. 2010).

"Blame" for an accident, without any additional consequences, does not rise to the level of objectively tangible harm for either discrimination or retaliation. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (a letter of reprimand, without tangible consequences, was not materially adverse and thus could not serve as the basis of a retaliation claim), citing *Weber v. Battista*, 494 F.3d 179, 185–86 (D.C. Cir. 2007) (evaluations were "adverse actions insofar as they resulted in her losing a financial award or an award of leave"). And, to the extent the assignment of blame was based upon a disagreement over how the events unfolded, "disagreements do not qualify as adverse actions for purposes of retaliation claims." *Id.*, citing *Burlington N.*, 548 U.S. at 68. Plaintiff has not asserted that, other than the "investigation" itself, Am. Compl. ¶ 35, he

suffered any tangible consequences for receiving the blame for the January 2016 accident. And an investigation into an employee's conduct, without more, is not an adverse employment action that will support a Title VII retaliation or discrimination claim. *Ginger v. District of Columbia*, 477 F. Supp. 2d 41, 53 (D.D.C. 2007) (collecting cases).

Thus, because plaintiff has asserted no actionable adverse acts within the applicable statute of limitations, the Court will dismiss plaintiff's Title VII claims of retaliation and discrimination.

## II. Title VII Hostile Work Environment Claim

### A. Timeliness

Plaintiff asserts that because he refused to take part in racial profiling, he was subjected to a hostile work environment. Am. Compl. ¶ 40. He contends that the suspensions, demotions, lack of recognition, blame, and reprimands all contributed to create this hostile work environment.[5] *Id.* Defendants argue that the hostile work environment claim, like the discrimination and retaliation claims, is untimely because no act that is "part of the same actionable hostile environment claim" falls within the 300-day time period. Defs.' Mem. at 7, citing *Morgan*, 536 U.S. at 120–21.

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115, citing 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 348–49 (3d ed. 1996) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of

---

5    Plaintiffs may plead alternative theories of harm that might stem from the same allegedly harmful conduct. *Baird v. Gotbaum* (*Baird I*), 662 F.3d 1246, 1252 (D.C. Cir. 2011) (finding that a court cannot "dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own").

13

its existence."). A hostile work environment cannot be said to occur on any particular day. *Id.* "Such claims are based on the cumulative effect of individual acts." *Id.*

*Morgan* explained that if one incident occurred within the applicable statute of limitations, then incidents that occurred outside this period, as long as they are sufficiently related to the incident within the time period, "may be considered by a court for the purposes of determining liability." *Id.* at 117.

But this principle is not unlimited. The D.C. Circuit stated, in an opinion that is binding on this Court:

> The *Morgan* principle is not, however, an open sesame to recovery for time-barred violations. Both incidents barred by the statute of limitations and ones not barred can qualify as "part of the same actionable hostile environment claim" only if they are adequately linked into a coherent hostile environment claim—if, for example, they "involve[ ] the same type of employment actions, occur[ ] relatively frequently, and [are] perpetrated by the same managers.

*Baird I*, 662 F.3d at 1251, quoting *Morgan*, 536 U.S. at 120–21. The Court has further explained that where a time-barred incident "had no relation to the [timely-filed] acts . . . or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim," such an incident need not be considered. *Id.* at 118 (internal quotations omitted). And it has cited *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011), for the proposition that a court should examine the "nature, frequency, and severity" of the time-barred incidents to determine whether they are adequately linked, and *Wheaton v. N. Oakland Med. Ctr.*, 130 Fed. Appx. 773, 787 (6th Cir. 2005) (emphasis omitted), for the proposition that *Morgan* requires an inquiry into whether incidents "occurring outside the statutory period are *sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment." *Baird I*, 662 F.3d at 1251 (emphasis in original).

14

Because one event falls within the applicable statute of limitations – the January 2016 accident – the Court must determine whether the alleged incidents that occurred prior to that date are sufficiently linked by examining the type of actions asserted, the frequency with which they occurred, and whether they were perpetrated by the same person. "That does not mean that it will always be necessary for the component-acts comprising a hostile work environment to be identical or to take the same form; however, there must be a 'common thread' among them." *Mason v. Geithner*, 811 F. Supp. 2d 128, 178 (D.D.C. 2011); *see Baird v. Gotbaum* (*Baird II*), 792 F.3d 166, 171 (D.C. Cir. 2015) (finding that the incidents asserted "had little to do with each other" because they "span[ned] eight years and involv[ed] different people doing different things in different contexts" and plaintiff made "no serious attempt to tie them together").

Plaintiff connects a series of unfortunate events to his refusal to participate in the racial profiling policy as of 2012. Am. Compl. ¶ 11. Plaintiff asserts that in 2012, he was reprimanded for being involved in an accident using a university vehicle, and that Captain Hilton suspended him for one day for allegedly working overtime without authorization. *Id*. ¶¶ 13–15. Two years later, in 2014, he was not recognized for his participation in an arrest although others were recognized, and he was suspended on a different occasion that year for three days for deciding not to arrest other individuals. *Id*. ¶¶ 16–20. In 2015, he did not receive recognition for making an arrest, and he was demoted by Chief of Police Gruber upon Captain Hilton's recommendation. *Id*. ¶¶ 21–29. Finally, in 2016, he was blamed for losing control of a car during a snow storm. *Id*. ¶¶ 32–34. Plaintiff asserts that Captain Hilton was behind all of these incidents, and the incidents were of similar types – lack of recognitions, reprimands, and suspensions. But, the incidents occurred relatively infrequently – there were only seven events over a span of four years – and the plaintiff only manages to characterize them as events of a similar type by lumping three types of

events of a markedly different nature into a single category. While plaintiff may have been equally chagrined by all of these instances, in which, in his view, he was treated unfairly, that broad similarity is not enough to make an occasion when he was not recognized for good police work similar in type to an occasion when his control of an automobile was called into question. And that lack of recognition happened only one other time, four years before.

So, applying the guidance that has been supplied by the D.C. Circuit, the Court cannot conclude that the *Morgan* principle applies in this case. But even if, viewed in the light most favorable to plaintiff, the acts asserted in his complaint could "collectively constitute one unlawful employment practice" since they all demeaned the plaintiff in some way, the claim fails for other reasons.

### B. Failure to State a Claim

Under *Morgan*, the "acts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim (i.e., be 'sufficiently severe or pervasive . . .')." *Baird I*, 662 F.3d at 1252.

In the employment discrimination context, a work environment is considered hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998), quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *see Ayissi-Etoh v. Fannie Mae,* 712 F.3d 572, 577 (D.C. Cir. 2013). A court should consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *see Baloch*, 550 F.3d at 1201. The complained of conduct must be "extreme" to constitute "a change in the terms

and conditions of employment." *Faragher*, 524 U.S. at 788. Assessment of a hostile work environment claim has both subjective and objective components: the complainant must perceive the environment to be abusive, and the environment must be objectively hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).

At the motion to dismiss stage, plaintiff need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949, quoting *Twombly*, 550 U.S. at 570. Accepting all of plaintiff's factual allegations as true, the Court still finds that he has not alleged conduct that is "sufficiently severe or pervasive" to state a plausible hostile work environment claim.

First, "[a]lthough [plaintiff] has offered a theory to link together the acts comprising [his] claim, the acts span a period of several years and were relatively infrequent." *Laughlin v. Holder*, 923 F. Supp. 2d 204, 220 (D.D.C. 2013). There were two years between the first suspension and the second suspension, and six months between the second suspension and the demotion. Also, the first suspension was overturned three months after it occurred, and his related pay was restored. Am. Compl. ¶ 15. These acts are more correctly described as isolated incidents than as pervasive conduct that might plausibly have created a hostile condition. *See McCain v. CCA of Tennessee, Inc.*, 254 F. Supp. 2d 115, 121 (D.D.C. 2003) ("[A]lleged harassment is generally not held to be sufficiently severe or pervasive to create a hostile work environment where it is limited to isolated incidents.").

Second, the reprimands and lack of recognition are not so "severe" or "offensive" to rise to a hostile work environment. *See Burlington N.*, 548 U.S. at 68 ("personality conflicts . . . are not actionable" under Title VII); *Baloch*, 550 F.3d at 1201 (finding that allegations of insult, public humiliation, and verbal clashes, along with the sporadic nature of the conflicts, did not rise to the

17

level necessary to support a hostile work environment claim). Seven incidents over four years, two of which were simply verbal reprimands and two that involved only an absence of recognition, do not constitute an "abusive" environment.

"[P]laintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard." *Baird I*, 662 F.3d at 1252. Here, plaintiff has not stated a claim for hostile work environment because the incidents he relays, taken together, are not sufficiently severe or pervasive. Because the Court finds that plaintiff has failed to state a claim for hostile work environment under Title VII, the Court need not address defendants' other arguments and will dismiss the claim.

### III. Plaintiff's DCHRA Claims and Jurisdiction

Only plaintiff's claims of retaliation, discrimination, and hostile work environment under the DCHRA remain. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction is within a court's discretion, *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005), and a district court may decline to maintain such jurisdiction where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction in the absence of a federal claim, a court balances consideration of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "Typically, if all federal law claims have been dismissed, the factors counsel against exercising supplemental jurisdiction." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 60 (D.D.C. 2011) (declining to exercise supplemental jurisdiction over District of Columbia statutory and common law claims after dismissal of civil rights claim brought under 42

U.S.C. § 1983); *see Hillware v. Snyder*, 151 F. Supp. 3d 154, 158 (D.D.C. 2015) (declining to exercise supplemental jurisdiction over DCHRA claims after dismissal of claims brought under Title VII);.

Here, with the dismissal of plaintiff's Title VII claims, no claim remains over which the Court has original jurisdiction. And the Court finds that the balance of the factors weighs against exercising supplemental jurisdiction over plaintiff's remaining District of Columbia law claims. Accordingly, the Court will decline to exercise its jurisdiction over plaintiff's DCHRA claims, and it need not reach the other arguments raised in defendants' motion to dismiss.

## CONCLUSION

Because the Court finds that plaintiff has failed to state a claim under Title VII, it will grant defendants' motion to dismiss in part and dismiss plaintiff's Title VII claims against both defendants. And because the dismissal of the federal claims divests this Court of jurisdiction, it will remand the case and the remainder of defendants' motion to dismiss to the Superior Court of the District of Columbia for further proceedings.

A separate order will issue.

**SO ORDERED**.

_____
AMY BERMAN JACKSON
United States District Judge

DATE: June 12, 2019